## In re PRESSER.
### No. 2179.

District Court, D. North Dakota, S. W. D.

Nov. 6, 1944.

John F. Lord, of St. Paul, Minn., for Federal Land Bank of Saint Paul and Federal Farm Mortgage Corporation.

Thelma Hovet, of Bismarck, N. D., for the bankrupt.

VOGEL, District Judge.

There have been certified to this Court by the Conciliation Commissioner, acting as Referee, two questions of law, with the request that this Court rule on such questions. Because of the pendency of a great many other bankruptcy cases, probably involving situations similar to those which have herein arisen, it appears desirable that this Court make its rulings on the questions certified. Counsel for both parties have participated in the certification of the questions of law to this Court, and have filed briefs in support of their respective positions. The questions certified are as follows:

(1) Is a bankrupt adjudged under Section 75, sub. s, entitled to discharge while in default of rental accrued for a crop season under the rental order entered pursuant to Section 75, sub. s(2)?

(2) Shall a Conciliation Commissioner, acting as Referee, accept for filing an application for discharge in bankruptcy by a bankrupt under Section 75, sub. s, when no proceedings whatsoever have been instituted by either the bankrupt or the creditor under the provisions of Section 75, sub. s(3), for either turn-over of the assets to the bankrupt at their appraised value or their sale by a trustee or other disposition of them by the Court?

The answer to the first question is clearly found in the Act itself. Section 75 of the Bankruptcy Act, being that portion of the Act referred to as the Frazier-Lemke law, makes only one reference to a discharge. In the last portion of subdivision 3 of subsection s, 11 U.S.C.A. § 203, sub. s(3) it is provided:

"The debtor shall have ninety days to redeem any property sold at such sale, by paying the amount for which any such property was sold, together with 5 per centum per annum interest, into court, *and he may apply for his discharge,* as provided for by this Act." (Emphasis supplied)

Section 14, subsection c (6), of the General Bankruptcy Act, provides:

"The court shall grant the discharge unless satisfied that the bankrupt has * * * (6) in the course of a proceeding under this Act refused to obey any lawful order of or to answer any material question approved by the court."

█ The rental order entered by the Conciliation Commissioner is a lawful order of the court. The question certified presupposes failure on the part of the bankrupt to comply with the Conciliation Commissioner's rental order of October 16, 1942, in failing to account for and pay rent as required by him to be paid for use of the real estate for the year 1944. If such is the fact then the bankrupt is not entitled to a discharge while in default of

rental payments based upon a lawful rental order. It follows that the answer to the first question is "no." In making such determination this Court does not intend to nor could it, on the record before it, determine or fix the amount of rental which the bankrupt should pay for the year 1944, or such portion of such year as he may have had the use and possession of the premises. That must be determined by the Conciliation Commissioner after proper hearing and giving proper consideration to the evidence before him.

The second question certified to this Court presents a more difficult problem. As stated above, the Frazier-Lemke Act carries no specific provision with reference to discharge, excepting only that quoted above that "he may apply for his discharge, as provided for by this Act." From the position of such provision in Section 75, subsection 3 of subsection s, however, it may be logically assumed that Congress intended that the bankrupt might make application for his discharge only subsequent to the occurrence of those things or happenings provided for immediately preceding such reference.

At the time the Frazier-Lemke Act was passed the General Bankruptcy Law contained a provision for the bankrupt's making of an application for discharge after the expiration of one month and within twelve months subsequent to the adjudication. Undoubtedly Congress, in referring to the bankrupt's application for discharge in Section 75, intended that the provisions regarding discharge, as contained in the General Act, should be applicable, excepting, of course, where a contrary intent is indicated in Section 75. In 1938 the General Bankruptcy Law was amended, so that those portions dealing with discharge, being Section 14, subsections a and b, 11 U.S.C.A. § 32, subs. a, b, now provide as follows:

"a. The adjudication of any person, except a corporation, shall operate as an application for a discharge: Provided, That the bankrupt may, before the hearing on such application, waive by writing, filed with the court, his right to a discharge. A corporation may, within six months after its adjudication, file an application for a discharge in the court in which the proceedings are pending.

"b. After the bankrupt shall have been examined, either at the first meeting of creditors or at a meeting specially fixed for that purpose, concerning his acts, conduct, and property, the court shall make an order fixing a time for the filing of objections to the bankrupt's discharge, notice of which order shall be given to all parties in interest as provided in section 58 of this Act. Upon the expiration of the time fixed in such order or of any extension of such time granted by the court, the court shall discharge the bankrupt if no objection has been filed; otherwise, the court shall hear such proofs and pleas as may be made in opposition to the discharge, by the trustee, creditors, the United States attorney, or such other attorneys as the Attorney General may designate, at such time as will give the bankrupt and the objecting parties a reasonable opportunity to be fully heard."

It will be noted particularly that, now, under the General Bankruptcy Act the adjudication operates as an application for discharge, and that there is no necessity for the bankrupt having to make application therefor. It will also be noted that under subsection b, supra, that "after the bankrupt shall have been examined, either at the first meeting of creditors or at a meeting specially fixed for that purpose, concerning his acts, conduct, and property," the Court shall then make an order fixing time for filing objections to discharge, et cetera. At that point in general bankruptcy the bankrupt no longer has anything to do with such of his property as remained above exemptions. He has been examined concerning his acts, his conduct and his property, and there is no logical reason why at that time the Court could not properly consider his right to a discharge.

Under Section 75, with which we are here concerned, it apparently was the intention of Congress to have the bankrupt apply for a discharge but there is no specific statutory provision as to the time for the making of such application and, accordingly, it becomes necessary for the courts to attempt to interpret legislative intent. It must be noted, first, that there is a vast difference between general bankruptcy and bankruptcy as provided for under Section 75. In general bankruptcy, if there be assets in excess of exemptions, a trustee is appointed by the Court and he takes over possession and control of such assets and administers them for the benefit of creditors. The bankrupt has nothing more to do with them. Under Section

75 the bankrupt becomes his own trustee under the supervision and control of the Court, and for a period of three years, or less, he may continue to act as such trustee, and use and operate that part of his property of which he retains control, provided he pays a reasonable rental fixed by the Court therefor. It seems to me that the granting of a discharge prior to the termination of the bankrupt's duties as his own trustee, either by the expiration of the period provided therefor or by redeeming his property in accordance with the provisions of the Act, or by the appointment of another trustee, or by having it stricken would be "getting the cart before the horse," and that no such situation was intended by Congress, and that it would be contrary to the logical sequence of events set forth in the Act itself. If a contrary conclusion be reached and a bankrupt should be granted a discharge prior thereto, we would have the impossible situation of a bankrupt being completely discharged from his obligations while still acting as trustee, without bond, in possession of his property, operating it, it is true, under supervision and control of the Court, but without such control as might affect his right to discharge from his obligations if he failed to comply with lawful orders of the Court, such as, for example, the payment of rent. It seems to me that Congress by its recitation of the provisions preceding the reference to discharge logically intended that there should be a termination of those provisions referred to before the discharge be granted. Certainly in the General Bankruptcy Act that is clearly set forth. In general bankruptcy there must be first the examination of the bankrupt, either at the first meeting of creditors or at a meeting specially fixed for that purpose, concerning his acts, conduct and his property. At that time he is severed from such assets as remain over and above his exemptions and there is no logical or lawful reason why at that point in general bankruptcy his right to discharge should not be properly considered by the Court.

The bankrupt's attorney in this case relies strongly upon a case from the 10th Circuit Court of Appeals, Federal Land Bank of Wichita v. Howell, 10 Cir., 1941, 123 F.2d 50, wherein the Court stated, at page 52:

"So construed, subsection s indicates a legislative intent to authorize a debtor proceeding under its provisions to make application for discharge at any time within three years after entry of the order of adjudication."

I do not believe that case determines the problem before this Court. In the first place, that case was decided under the General Bankruptcy Law as it existed prior to the 1938 amendment, and when the statute then in effect provided that a petition for discharge must be filed, and that it might be filed after the expiration of one month and within the next twelve months subsequent to adjudication in bankruptcy. Secondly, in the Howell case the Court terminated the proceedings under Section 75 and referred the case to a referee for administration in general bankruptcy, and the bankrupt by a second supplemental amended petition prayed that all further proceedings in the cause be had "under and in accordance with the provisions of the bankruptcy law to the end that his estate be accordingly administered and liquidated." The discharge in that case was resisted because the application therefor was filed subsequent to the twelve months' period and the Court merely held that, it having been instituted under Section 75, the Court could consider the application for discharge if filed at any time within three years after the entry of the order of adjudication. Accordingly, that Court did not have before it the question of whether or not a bankrupt under Section 75 could apply for and obtain a discharge while still acting as his own trustee or while still operating under the provisions contained in Section 75, sub. s. The Court in the Howell case well stated, at page 52 of 123 F.2d:

"It is a cardinal rule of universal application that the legislative intent controls in the exposition of statutes. That intention is to be derived from a view of the whole and every part of the statute, considered together and in the light of the general purpose of the act. And when words, phrases, clauses, sentences or provisions are not explicit, the intention is to be collected from the context, the tenor, the spirit, the occasion and necessity of the law, and the remedy in view."

■ An examination of Section 75, sub. s (3), 11 U.S.C.A. § 203, sub. s (3) discloses the provision that at the end of three years, or prior thereto, the debtor may pay into court the amount of the ap-

praisal of the property of which he retains possession. The section then provides for reappraisal or hearing on value upon the application of either creditors or debtor. It next provides for redemption of the property at the value so arrived at. It then provides for a turn-over order turning over full possession and title to the property retained. There follows a provision with reference to a request on the part of the creditors for a public sale of the property and its redemption therefrom by the debtor, *and then, and only then,* does the Act refer to the bankrupt's right to make application for discharge. The position of such reference to discharge in the Act itself presupposes the happening of the things contained in the former provisions, and I believe it only fair to assume that Congress intended that the discharge could not be granted where there had been neither turn-over order of assets to the bankrupt, their transfer to another trustee, or some other disposition of such assets by the Court, or termination of the proceedings through expiration of the statutory or stay period.

It follows that an application for discharge in bankruptcy may not be fully considered or granted until it shall have appeared that the above provisions have been complied with, as well as a satisfaction of such provisions as are contained in the General Bankruptcy Act relating to discharge.

This case will be re-referred to the Conciliation Commissioner for proceedings not inconsistent with the foregoing.